1

2

3

4

5

6

7                      UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

WINNER CHEVROLET, INC.,
10 a California corporation,
DAVID GARD and STEPHANIE
11 GARD,

12                                      NO. CIV. S-08-539 LKK/JFM
            Plaintiffs,
13
        v.
14                                         O R D E R
UNIVERSAL UNDERWRITERS
15 INSURANCE COMPANY, ZURICH
DIRECT UNDERWRITERS, ZURICH
16 AMERICAN INSURANCE COMPANY,
and DOES 1 through 30,
17
            Defendants.
18 _____/

19      This action arises out of the alleged wrongful denial of a

20 claim under an insurance policy covering employee dishonesty.

21 Plaintiffs Winner Chevrolet, Inc., David Gard, and Stephanie Gard

22 have brought suit against defendants Universal Underwriters

23 Insurance Company ("Universal") and Zurich American Insurance

24 Company ("Zurich") alleging breach of contract, breach of the

25 implied covenant of good faith and fair dealing, and negligent and

26 intentional infliction of emotional distress.  Plaintiff Winner

                                 1

1  Chevrolet, an automobile dealership, alleges that it lost
2  approximately $180,000 due to employee theft and embezzlement, and
3  that its losses are covered by the insurance policy.  Pending
4  before the court is a motion to dismiss, which argues that Zurich
5  and two of the three plaintiffs (David Gard and Stephanie Gard) are
6  improper parties to the contract-related claims, and that the
7  negligent and intentional infliction of emotional distress claims
8  should be dismissed.  The court resolves the matter upon the
9  parties' papers and after oral argument.  For the reasons explained
10 below, the motion is granted.

11                    **I. Factual Background[1]**

12      Plaintiffs allege that they purchased an insurance policy from
13 defendants that, among other things, covered employee dishonesty.
14 FAC ¶¶ 10, 11.  Thereafter, two employees of the automobile
15 dealership allegedly stole and embezzled approximately $180,000.
16 FAC ¶ 23.  Plaintiffs allege that defendants wrongfully refused to
17 pay benefits for these losses under the policy.  FAC ¶ 24.

18      Only defendant Universal, rather than defendant Zurich, issued
19 the policy.  Defs.' Request for Judicial Notice, Ex. 1 ("Policy"),
20 at 0027.[2]  The policy itself consists of multiple parts, each of

21 _____

22      [1] The allegations are derived from plaintiff's First Amended
   Complaint ("FAC").

23      [2] "A court may consider evidence on which the complaint
   'necessarily relies' if: (1) the complaint refers to the document;
24 (2) the document is central to the plaintiff's claim; and (3) no
   party questions the authenticity of the copy attached to the
25 12(b)(6) motion."  Marder v. Lopez, 450 F.3d 445, 448 (9th Cir.
   2006).  Here, the insurance policy is referenced in the complaint,
26 is central to several of the claims, and plaintiff has not

                                    2

1   which is deemed a separate insurance contract.  Id. at 0026 ("The
2   entire document constitutes a multiple coverage insurance policy.
3   Unless otherwise stated in a Coverage Part, each Coverage Part to
4   made up of its own provisions . . . [and] becomes a separate
5   contract of insurance."). Each part covers different insureds, who
6   are identified by the use of letters or numbers.  Id. at 0004
7   ("[THIS] INSURANCE APPLIES ONLY TO THOSE INSUREDS . . . DESIGNATED
8   FOR EACH COVERAGE AS IDENTIFIED IN ITEM 2 BY LETTER(S) OR
9   NUMBER.").

10      The coverage at issue in this action for employee dishonesty
11  applies only to Winner Chevrolet, Inc. and an entity not relevant
12  here (Sierra Chevrolet, Inc. 401(K) Plan).  Id. at 0011 (listing
13  "01, 02" as insureds for employee dishonesty coverage, previously
14  defined as Winner Chevrolet and Sierra Chevrolet).  David Gard and
15  Stephanie Gard are not listed as insureds for employee dishonesty
16  coverage.  Id. at 0004 (listing "03" code for David Gard, and "AA"
17  code for David and Stephanie Gard).

18      Plaintiffs allege that Zurich is both the parent corporation
19  of Universal, FAC ¶ 5, and the successor-in-interest to Universal,
20  FAC ¶ 7.  They allege that Zurich "specifically assumed the duties
21  and obligations of Universal."  Id.  Plaintiffs also allege that
22  they submitted their claims to Zurich, rather than Universal, and
23  that Zurich denied the claims.  FAC ¶ 38 (alleging that claim was
24  denied on Zurich letterhead).  The letters referenced in the

25  _____

26  questioned its authenticity.

1  complaint, however, were signed by "Universal Underwriters
2  Insurance Company, Class Counsel."   Decl. of Lawrence Kriss, Exs.
3  1 and 2.   In addition, the letter noted that it was responding
4  under the "insuring agreement . . . with Universal Underwriters
5  Insurance Company"; that "Universal Underwriters ha[d] previously
6  denied [the] claims"; and that "Universal Underwiters denies the
7  entire claim."   Id. at Ex. 1.

**II. Standard**

9     In order to survive a motion to dismiss for failure to state
10  a claim, plaintiffs must allege "enough facts to state a claim to
11  relief that is plausible on its face."   Bell Atlantic Corp. v.
12  Twombly, -- U.S. --, 127 S. Ct. 1955, 1974 (2007).   While a
13  complaint need not plead "detailed factual allegations," the
14  factual allegations it does include "must be enough to raise a
15  right to relief above the speculative level."   Id. at 1964-65.

16     The Supreme Court recently held that Federal Rule of Civil
17  Procedure 8(a)(2) requires a "showing" that the plaintiff is
18  entitled to relief, "rather than a blanket assertion" of
19  entitlement to relief.   Id. at 1965 n.3.   Though such assertions
20  may provide a defendant with the requisite "fair notice" of the
21  nature of a plaintiff's claim, the Court opined that only factual
22  allegations can clarify the "grounds" on which that claim rests.
23  Id.   "The pleading must contain something more. . . than . . . a
24  statement of facts that merely creates a suspicion [of] a legally
25  cognizable right of action."   Id. at 1965, quoting 5 C. Wright &
26  A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d

4

1  ed. 2004).[3]

2      On a motion to dismiss, the allegations of the complaint must

3  be accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).

4  The court is bound to give the plaintiff the benefit of every

5  reasonable  inference  to  be  drawn  from  the  "well-pleaded"

6  allegations of the complaint.  See Retail Clerks Int'l Ass'n v.

7  Schermerhorn, 373 U.S. 746, 753 n.6 (1963).   In general, the

8  complaint is construed favorably to the pleader.  See Scheuer v.

9  Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by

10  Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Nevertheless, the court

11  does not accept as true unreasonable inferences or conclusory legal

12  allegations cast in the form of factual allegations.  W. Mining

13  Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

## III. Analysis

### A. Defendant Zurich

16      To state a breach of contract claim, plaintiff must plead the

17  existence of  a  contract  with  the  defendant.   Careau & Co. v.

18  Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1388

19  (1990).   Here, based on the plain language of the policy, only

20  Universal assumed a duty to insure Winner for its losses caused by

21  dishonest employees.  Nevertheless, plaintiffs argue that Zurich

22  is liable as the parent corporation to Universal and as the alleged

23

24      [3] The  holding  in  Twombly  explicitly  abrogates  the  well
established holding in Conley v. Gibson that, "a complaint should
25  not be dismissed for failure to state a claim unless it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief."  355 U.S.
26  41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

1   successor-in-interest to Universal.[4]

2        **i. Liability as Parent Corporation**

3        With respect to Zurich's liability as parent corporation, "it

4   is a general principle of corporate law deeply 'ingrained in our

5   economic and legal systems' that a parent corporation . . . is not

6   liable for the acts of its subsidiaries." <u>United States v.</u>

7   <u>Bestfoods</u>, 524 U.S. 51, 61 (1998); <u>N. Natural Gas Co. v. Superior</u>

8   <u>Court</u>, 64 Cal. App. 3d 983, 991 (1976) ("A parent corporation is

9   not liable on the contract or for the tortious acts of its

10  subsidiary simply because it is a wholly owned subsidiary.").

11       There are two exceptions to this general rule.  Parents may

12  be held liable for the acts of their subsidiaries where the

13  subsidiary is merely the alter ego of the parent, or where the

14  subsidiary acts as the general agent of the parent.  <u>See</u> <u>Harris</u>

15  <u>Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.</u>, 328 F.3d

16  1122, 1134 (9th Cir. 2003).  Here, plaintiffs argue that Universal

17  was the alter ego of Zurich, because Universal engages in no

18  independent business other than through Zurich[5] and shares the same

19  _____

20       [4] Plaintiffs also argue that non-parties to a contract may be
    held liable for its tortious breach pursuant to <u>Delos v. Farmers</u>
21  <u>Ins. Group, Inc.</u>, 93 Cal. App. 3d 642 (1972), which is
    distinguishable on its facts and whose authority has subsequently
22  been called into question.  <u>See</u> <u>Filippo Industries, Inc. v. Sun</u>
    <u>Ins. Co.</u>, 74 Cal. App. 4th 1429, 1443 (1999) (noting that <u>Delos</u> was
23  limited to situations involving "interinsurance exchanges" and
    where the plaintiff would otherwise be without redress); <u>Monaco v.</u>
24  <u>Liberty Life Assurance Co.</u>, No. C06-07021 MJJ, 2007 WL 420139 at
    *4 n.8 (N.D. Cal. Feb. 6, 2007) ("some California courts have
25  stated it is questionable if the basis for <u>Delos</u> still exists").

26       [5] This allegation is not made in the complaint.

1  phone number and address as Zurich.  Cf. Marr v. Postal Union Life
2  Ins. Co., 40 Cal. App. 673, 684 (1940) ("use of common offices by
3  two corporations is regarded as indicating, or at least supporting,
4  a conclusion that one is the alter ego of the other").    In
5  addition, Zurich, rather than Universal, allegedly denied
6  plaintiffs' claims on Zurich letterhead.  FAC ¶ 38.  As noted
7  above, however, the body of the letters and the signature line of
8  the author all clearly reference Universal.

9       Under California law, two conditions must both be met in order
10  to invoke the alter ego theory: (1) a unity of interest and
11  ownership must exist between two corporate entities such that there
12  does not exist a separateness between them; and (2) injustice would
13  result if the acts in question were treated as those of only one
14  of the corporate entities.  Sonora Diamond Corp. v. Super. Ct., 83
15  Cal. App. 4th 523, 538 (2000).  "[B]oth of these requirements must
16  be found to exist before the corporate existence will be
17  disregarded."  Associated Vendors, Inc. v. Oakland Meat Co., 210
18  Cal. App. 2d 825, 837 (1962).

19       Here, the complaint fails to plead adequate facts to support
20  either of these findings.  Plaintiff has made no allegation that
21  Universal would, for example, be unable to satisfy a judgment such
22  that injustice would result unless Zurich were joined as a
23  defendant.  See Fru-Con Constr. Corp. v. Sacramento Mun. Util.
24  Dist., No. CIV. S-05-583 LKK/GGH, 2007 WL 2384841, at *3 (E.D. Cal.
25  Aug. 17, 2007)("In the vast majority of cases, courts have only
26  pierced a corporation that was bankrupt, insolvent, or otherwise

7

1  incapable of paying judgment."); <u>Monaco</u>, 2007 WL 420139, at *5 ("In
2  order to successfully plead liability for an underlying cause of
3  action under the alter-ego theory, the plaintiff must make
4  allegations of facts from which it appears that recognition of the
5  corporate entity would sanction a fraud or promote injustice.").[6]
6  Plaintiff has also not argued that it could make such an allegation
7  in good faith.  In addition, as noted earlier, plaintiffs have not
8  alleged that Universal engages in no independent business except
9  through Zurich.  Accordingly, the court finds that plaintiff has
10 failed to plead sufficient facts to support alter ego liability.[7]

11      **ii. Liability as Successor-in-Interest**

12      Plaintiffs also argue that Zurich is liable as an alleged
13 successor-in-interest to Universal.  "The general rule of successor
14 nonliability provides that where a corporation purchases or
15 otherwise acquires by transfer, the assets of another corporation,
16 the acquiring corporation does not assume the selling corporation's
17 debts and liabilities."  <u>Fisher v. Allis-Chalmers Corp. Prod. Liab.</u>
18 <u>Trust</u>, 95 Cal. App. 4th 1182, 1188 (2002).

19      There are four exceptions the general rule of successor
20 nonliability: "(1) there is an express or implied agreement of
21 assumption, (2) the transaction amounts to a consolidation or

22 _____

23      [6] Plaintiffs' argument that it would be more difficult to
24 obtain discovery from Zurich as a non-party is not the type of
   injustice to warrant disregard of the corporate form.

25      [7] Of course, if, through discovery, plaintiff learns facts
26 sufficient to justify suit against Zurich, it can then move to join
   it as a defendant.

8

1  merger of the two corporations, (3) the purchasing corporation is
2  a mere continuation of the seller, or (4) the transfer of assets
3  to the purchaser is for the fraudulent purpose of escaping
4  liability for the seller's debts." <u>Ray v. Alad Corp.</u>, 19 Cal. 3d
5  22, 28 (1977).  Here, plaintiffs argue that Zurich assumed the
6  duties of Universal and was also a mere continuation of Universal.

7      With regard to assumption of duties, plaintiffs must allege
8  more than a terse allegation (e.g., "Zurich . . . specifically
9  assumed the duties and obligations of Universal," FAC ¶ 6) to
10 support a finding that there was an express or implied assumption
11 of liability.  They must allege facts.  By analogy, in pleading
12 breach of contract, plaintiff must plead the "existence of a
13 contract [and] its terms which establish the obligation at issue."
14 <u>FPO Dev., Inc. v. Nakashima</u>, 231 Cal. App. 367, 382 (1992).
15 Similarly, plaintiffs here must not only plead the existence of an
16 assumption of liability but either the terms of that assumption of
17 liability (if express) or the factual circumstances giving rise to
18 an assumption of liability (if implied).  Although plaintiffs argue
19 that an implied assumption of liability may be inferred by Zurich's
20 conduct, the mere allegation that Zurich communicated with
21 plaintiffs regarding their claims and that it shared a common
22 address with Universal is not enough from which to infer that
23 Zurich agreed to assume Universal's liabilities.  See <u>Truck Ins.</u>
24 <u>Exch. v. Amoco Corp.</u>, 35 Cal. App. 4th 814, 826 (1995) (finding
25 that claims handling by parent corporation does not evince implied
26 agreement to assume liabilities of subsidiary).

1   With regard to the allegation that Zurich is the mere
2   continuation of Universal, plaintiffs argue that the transition in
3   claims handling between Zurich and Universal was seamless.  This
4   is plainly not the type of situation encompassed by the mere
5   continuation doctrine.  Mere continuation exists only where "(1)
6   no adequate consideration was given for the predecessor
7   corporation's assets and made available for meeting the claims of
8   its unsecured creditors," or "(2) one or more persons were
9   officers, directors, or stockholders of both corporations." <u>Ray</u>,
10  19 Cal. 3d at 29.  Plaintiffs have not alleged (nor argued that
11  they could allege) either of these facts.  Accordingly, the court
12  finds that plaintiffs have not sufficiently alleged Zurich's
13  liability as a successor-in-interest to Universal through either
14  an assumption of duties or mere continuation.[8]

15  **B. Plaintiffs Stephanie and David Gard**

16  In order to possess standing to assert a breach of contract
17  claim against an insurer, a plaintiff must generally be "an insured
18  under the relevant policy, either by virtue of being a party to the
19  insurance contract or named in the policy." <u>Seretti v. Superior</u>
20  <u>Nat'l Ins. Co.</u>, 71 Cal. App. 4th 920, 929 (1999).  Thus, for
21  instance, generally only an insured corporation, rather than the
22  corporation's shareholders, can assert breach of contract and bad
23  faith claims against an insurer.  <u>Id.</u> at 929-30; <u>see also</u> <u>Republic</u>
24  <u>Indem. Co. of Am. v. Schofield</u>, 47 Cal. App. 4th 220, 227 (1996)

25  ───────────────
26  [8] Again, discovery may lead to facts justifying Zurich as a
    party.

10

1  (holding that former officers and directors of a company were not

2  covered under a policy where only the company was the named

3  insured); <u>Burns v. Cal. Fair Plan</u>, 152 Cal. App. 4th 646, 652

4  (2007) ("The nature and effect of an insurance contract is to

5  indemnify the *insured* against loss or damage, and not someone else

6  who is not a party to the contract.") (internal quotation marks

7  omitted).

8      Here, plaintiffs Stephanie and David Gard argue that they have

9  standing to assert the contract-related claims because the policy

10 lists them as "named insureds" or "other insureds."[9]   Policy at

11 0004.   But this cited portion of the policy also notes that

12 different coverages apply to different insureds, <u>id.</u>, and the

13 coverage for employee dishonesty does not list either Stephanie or

14 David Gard, <u>id.</u> at 0011.   Instead, that part of the policy

15 pertaining to employee dishonesty lists only Winner Chevrolet and

16 Sierra Chevrolet, Inc. 401(K) Plan (the former of which is a

17 plaintiff in this action and undisputably has standing to assert

18 the contract-related claim).   The interpretation urged by

19 plaintiffs would directly contradict the plain language of this

20 section.

21 _____

22      [9] Specifically, plaintiffs argue that the policy is ambiguous, because under the section defining "who is an uninsured" for
23 employee dishonesty coverage, the policy states "With respect to [loss] insured under this Coverage Part, only [you]." <u>Id.</u> at 0057.
24 "You" is in turn defined in the General Conditions of the policy as "the person or organization shown in the declarations as the
25 Named Insured." <u>Id.</u> at 0027.   Thus, contrary to the contract's terms, under plaintiffs' interpretation any person listed as a
26 Named Insured possesses coverage for all coverage parts of the policy.

1    Stephanie and David Gard are in fact covered under various

2  parts of the policy -- including coverage for accidental injury or

3  property damage, id. at 0006, automobile insurance, id. at 0013-14,

4  and excess liability coverage against third-party claims, id. at

5  0015-16 -- but coverage for employee dishonesty is not one of them.

6  Contrary to plaintiffs' argument, the policy is unambiguous as to

7  this issue.  Stephanie and David Gard therefore lack standing to

8  assert the breach of contract and breach of good faith and fair

9  dealing claims. See Seretti, 71 Cal. App. 4th at 929 (noting that

10 implied covenant of good faith and fair dealing first requires

11 existence of contractual relationship).

12 **C. Negligent and Intentional Infliction of Emotional Distress**

13   Plaintiffs' infliction of emotional distress claims are

14 contingent upon a threshold finding that defendant owed plaintiffs

15 a duty under the contract. See Coleman v. Republic Indem. Ins. Co.

16 of Cal., 132 Cal. App. 4th 403, 415 ("a cause of action for

17 negligent infliction of emotional distress . . . is predicated on

18 a duty owed by the Insurer to the [plaintiff]"); Christensen v.

19 Superior Court, 54 Cal.3d 868, 890 (1991) ("damages for severe

20 emotional distress may be recovered 'when they result from the

21 breach of a duty owed the plaintiff that is assumed by the

22 defendant or imposed on the defendant as a matter of law, or that

23 arises out of a special relationship between the two.'").  Because

24 the court concludes that plaintiffs were not owed a duty under the

25 coverage for employee dishonesty, plaintiffs have similarly failed

26 to state a claim for the infliction of emotional distress.

1

**IV. Conclusion**

2     For the reasons explained above, the motion to dismiss is

3 GRANTED without leave to amend.

4     IT IS SO ORDERED.

5     DATED:  July 1, 2008.

6

7

8                    LAWRENCE K. KARLTON
                   SENIOR JUDGE

9                    UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

13